## MELVIN W. MESSER v. MARIAN C. MESSER.

184 N. W. (2d) 801.

March 12, 1971—No. 42220.

*Julian Hook* and *Geimer, McRostie & Rice,* for appellant.
*Irwin Ketroser,* for respondent.

Heard before Knutson, C. J., and Murphy, Peterson, Kelly, and Odden, JJ.

KELLY, JUSTICE.

Appeal from an order of the district court denying defendant's motion for a new trial in a divorce action and from the judgment entered. Defendant contends that the trial court abused its discretion in the amount of alimony and attorney's fees awarded, the division of property acquired during coverture, and its rulings and orders on the admission of evidence.

It appears from the record that at the time the action was tried, both the husband, Melvin W. Messer, and the wife, Marian C. Messer, were 45 years of age. They had been married 23 years and had three children—two sons, ages 19 and 9, and a daughter, age 16. The husband is employed as a project testing engineer. His income varies from $12,000 to over $15,000 a year, depending

on overtime. During the early part of their marriage, the wife had worked while her husband attended college and, since the breakup of the marriage, she has been employed as a secretary in a school district at a salary of $360 a month on a 9-month basis. They accumulated savings of about $15,000 from the husband's earnings which they invested in their home. The home was built by their own labor, and it is agreed that the wife, through her efforts, contributed to the construction of the home, which had a reasonable market value of $30,000. In December 1967, after 22 years of married life, the husband told the wife that he no longer wanted to be married to her because she was too extroverted for him, she did not play golf and bridge well enough, and he did not wish to grow old with her. It is a fair inference from the evidence that the wife did not want a divorce and tried to please her husband after he made this pronouncement and that she was a faithful, loving wife, a good housekeeper, and a good mother. She testified that as part of her housework she did the snow shoveling, yard work, changing of screens and storm windows, and that she did this out of love for her husband so that he would have time for his hobbies of hunting, fishing and golf—besides, she had to stay home with the children anyway. The wife testified that she knew of no conduct that had brought on his change of attitude toward her, and there was no evidence of any misconduct on her part. The husband left the home in July 1968 and started this action for divorce, and the wife then counterclaimed for a divorce.

At the outset, the wife's attorney asked whether the husband's complaint would be dismissed. The husband's attorney in response stated in effect that the defendant could proceed to a default divorce under the cross-complaint and that all other issues would remain contested. As directed by the court, counsel for the wife proved the grounds for her divorce first and then proceeded to prove facts and circumstances relative to these contested provisions of alimony, the division of property, and attorney's fees to be awarded.

In granting the wife's cross-claim for divorce, the trial court awarded custody and control of the minor children to the wife, with $90 a month support for each child. The support was to continue until each child reached his 21st birthday, became self-supporting, or until further order of the court. Although the wife was the owner of a one-half interest in the home, the trial court divested the wife of "any and all right, title and interest" in it and, as sole alimony, awarded her and the children occupancy of the home until December 31, 1980, plaintiff being required to pay all real estate taxes, special assessments against the premises, and maintenance during the period it is held by the wife. "Maintenance" was not defined. This "alimony" was to terminate upon her remarriage or other appropriate order of the court. The personal property, about which there is no dispute, was divided between the parties. The husband was awarded 40 shares of stock, some savings bonds, savings accounts, and a checking account with a total value, according to the testimony, of approximately $1,600, a 1968 automobile, and his life insurance with a face value of $21,500 (cash surrender value not shown). In connection with his employment, the husband will receive a pension of over $300 per month at age 62. The wife retained her savings account of $1,020 and a checking account of $200 and was awarded the household furniture, which for the most part was old, and a 1965 Ford automobile.

Minn. St. 518.54, subd. 3, provides:

" 'Alimony' means an award made in a divorce proceeding of payments from the future income or earnings of one spouse for the support and maintenance of the other."

We cannot say that the trial court's disposition squarely accords with the above statute nor with our stated policy that "[a]limony comprehends a definite sum payable for an indefinite period in the future, to terminate upon the death or remarriage of the wife." Mikkelsen v. Mikkelsen, 286 Minn. 520, 522, 174 N. W. (2d) 241, 243.

With respect to the division of property in a divorce action, Minn. St. 518.58 provides:

"Upon a divorce for any cause, or upon an annulment, the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony or support money, if any, awarded in the judgment, the manner by which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case."

In effecting the division of property the trial court may consider the ages of the parties, earning ability of each, conduct of their marriage and its duration, station they occupy in life, circumstances and necessities of each, probability of continuing present employment into future, capacity and ability to obtain new employment under changing circumstances and needs, financial circumstances of the parties as shown by the property acquired, together with its value and income-producing capacity, accumulated debts and liability, all facts with respect to whether the property of the parties has been accumulated before or after marriage, and all other matters disclosed by the evidence. Ruprecht v. Ruprecht, 255 Minn. 80, 96 N. W. (2d) 14.

In Vandewege v. Vandewege, 284 Minn. 330, 334, 170 N. W. (2d) 228, 230, this court pointed out that "the misconduct of the wife has a substantial bearing on the amount of the award." In Borchert v. Borchert, 279 Minn. 16, 154 N. W. (2d) 902, this court held the delinquency of the wife is one of the elements to be considered in determining the division of property and award of alimony. It should follow that good conduct should be one of the facts and circumstances referred to in the statutes which would affect and be considered in arriving at the division of property and alimony in a divorce case.

In the instant case the plaintiff was capable of earning, and did earn for some 2 years prior to the trial, over $15,000 per year which included regular overtime. The wife, unlike many others during marital difficulties, did go out and get a job paying about $4,200 for 9 months' work, although she had not worked for 19 years prior to the divorce action. It could be argued that the husband might not get overtime in the future, just as it could be argued that the wife who will have to work all day and then come home to do the housework and yard work and take care of her children might not be able to continue this schedule.

In spite of the fact that the court stated during the trial that the wife was the owner of one-half interest in the home, the court decreed the husband to be the sole owner of the home, valued at $30,000. While the court gave her the use of the home for herself and the children for a period of about 11 years (until December 31, 1980), obviously, the primary purpose of so doing was to maintain a home for the children. Considering the children's use and occupancy of the home and the wife's one-half ownership of the home which the court decreed to the husband, it is difficult to spell out any alimony, even though the husband was to pay for the taxes and maintenance of the home. The wife's station in life prior to the marital difficulties had permitted her to give full time to take care of her household and children without the necessity of working outside the home. It is obvious that under the court's decree the wife would not be able to live in a manner even approaching her station in life and in all probability would not be able to make ends meet.

Viewing the situation about 4 years after the decree, when the second oldest child becomes 21, the wife would have $90 support for the one child and the right to live in a home in which at the time of the divorce she owned a one-half interest and which during the 11-year period involved would be occupied by the children for various periods of time. The husband would then be paying $90 a month, plus taxes, special assessments on the home and maintenance thereof. Only one child would then be living in the

house and the $90 a month for his support, after payment for his share of food and household supplies, his clothing, medical and dental bills, entertainment, school supplies, and other miscellaneous expenses, would leave very little to apply to the general household expenses and automobile expenses. Obviously, the overhead for running a household and automobile remains somewhat constant whether there are two or five persons living in the house. Thus, about 4 years after the divorce, while the husband would have a potential income of almost $14,000 after paying for the child's support, the wife would have an income of $4,200. Consequently, the husband will have financially improved his station in life while the wife's station will be reduced to the point where she may not be able to make ends meet. Certainly she could not replace her 1965 automobile nor the household furniture and appliances as they become worn out.

In addition to the foregoing, the court below awarded no attorney's fees, stating that $500 had been paid by the husband. This is disputed by defendant and is not borne out by the record.

The situation in 11 years will be that the husband will own outright the $30,000 home of the parties, will have no obligation to support any of the children as they will then be 21 years of age or older, and will have no alimony payments to make. The court has reserved the right to consider the question of alimony at that time. However, in all probability the husband will be remarried and will have additional obligations, or may be sick, dead, or otherwise unable to pay any alimony, so this reservation of the question of alimony for reconsideration 11 years hence would be of small comfort to any wife under the circumstances of this case.

We are not unmindful that this court has held that the trial court has broad discretion in determining a division of property of the parties in a divorce suit and the alimony and support money to be paid, but this broad discretion is not without limitation and is subject to review. Cozik v. Cozik, 279 Minn. 91, 155 N. W. (2d) 471. Thus, in Reiland v. Reiland, 280 Minn. 444, 160

N. W. (2d) 30, this court held that in spite of the fact that the husband was granted a divorce and that the court found that the plaintiff wife had conducted a course of continuous bickering and faultfinding and other acts of a malicious nature subversive to the relationship of husband and wife and that she had committed adultery "without consent, connivance, privity or procurement," 280 Minn. 446, 160 N. W. (2d) 32, this court found that the evidence did not warrant depriving the wife of all interest in the personal property of the parties accumulated during their marriage and granted a new trial. In Cozik this court found that the trial court had abused its discretion in awarding more than one-half of the husband's property to the wife and remanded the case to the trial court with instructions to amend the findings, conclusions of law, and order for judgment and the judgment so as to grant to plaintiff a division of property not to exceed one-half the value thereof.

In Vandewege v. Vandewege, *supra,* we held that it was error to deny alimony notwithstanding the wife's misconduct under the facts and circumstances in that case.

It appears from the foregoing decisions that this court has reversed the determinations of trial courts on divorce matters where it appears that there was an abuse of discretion.

While it may be unlikely that the wife will remarry in this case, the provision in the decree that upon the marriage of the wife the occupancy of the home by the wife and children shall terminate would appear to be punitive under the circumstances here.

Without discussing in detail the rulings of the trial court on the admission of evidence, we think that they were unduly restrictive in the light of the authorities cited herein, the assertion by the husband's attorney that all issues but the default divorce were contested, and his refusal to stipulate to the evidence that was being offered on behalf of the wife.

We do not by this decision abrogate the rules that a wife has no absolute right to alimony and that trial courts have broad dis-

cretion in fixing the amount. We simply hold that under all the facts and circumstances in this case, such as the duration of the marriage, the lack of any misconduct of the wife, the financial status, employment and earning capacities of the parties, their station in life, the division of the property involved, the unique and different provisions for "alimony," the conduct of the parties in connection with the marriage relationship, the needs of the wife now and through the foreseeable future, and the lack of any award for attorney's fees, a new trial should be ordered.

On this appeal the defendant is awarded the sum of $250 attorney's fees together with her costs and disbursements.

Reversed and remanded for a new trial.